IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   10-cv-01377-REB-MJW

JEREMY PINSON,

Plaintiff,

v.

ROBERT PACHECO,
SARA REVELL,
MERRY WILNER,
DELBERT SAVERS,
HARLEY LAPPIN, and
MICHAEL NALLEY,

Defendants.

_____

## RECOMMENDATION ON
## PLAINTIFF'S RENEWED EMERGENCY MOTION FOR SUBPOENA, HEARING, AND ISSUANCE OF A PRELIMINARY INJUNCTION
## (Docket No. 32)

_____

**MICHAEL J. WATANABE**
**United States Magistrate Judge**


This case was referred to this court pursuant to an Order of Reference to United

States Magistrate Judge issued by Judge Robert E. Blackburn on August 6, 2010.

(Docket No. 20).

The pro se plaintiff, Jeremy Pinson, who is incarcerated at the Federal

Correctional Institution in Talladega, Alabama, asserts the following in his Prisoner

Complaint (Docket No. 3) which is brought pursuant to 28 U.S.C. § 1331 and Bivens v.

Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  Plaintiff

is a federal prisoner who was formerly housed at USP Florence in Colorado.  In Claim

One, plaintiff alleges a violation of the Eighth Amendment. On October 14, 2007, which was eleven days after plaintiff was moved to USP Florence, plaintiff was assigned to the Special Housing Unit ("SHU") where he initiated administrative remedies seeking protection due to previous assistance to law enforcement and sexual orientation. Defendants Wilner and Revell processed the administrative remedy request, which Revell denied. Another SHU inmate, Brian Humphreys, had a history of assaults and had threatened to assault any inmate assigned to his cell. Revell was aware of Humphrey's threats, but on December 11, 2007, Revell authorized plaintiff's assignment to Humphrey's cell. On December 12, 2007, Humphreys attacked plaintiff until plaintiff lost consciousness and sustained serious bodily injury.

In Claim Two, plaintiff also alleges a violation of the Eighth Amendment. Plaintiff advised defendants Pacheco, Wilner, and Revell that his life was in danger due to previous assistance to law enforcement and sexual orientation. These defendants knew plaintiff would be in danger if transferred to another institution due to his assistance to law enforcement yet submitted a transfer request to defendant Sauers. Prior to his transfer, plaintiff submitted letters and administrative remedy appeals to defendants Lappin, Nalley, and Sauers seeking protection and specifically requesting a transfer to a lower security institution. Revell, Wilner, Pacheco, Lappin, and Nalley took no steps to protect the plaintiff, and on February 14, 2008, Revell and Sauers transferred plaintiff to USP Victorville, California. Prior to such transfer, all defendants knew USP Victorville housed violent prison gangs and was where dozens of assaults and a murder had occurred. Plaintiff was stabbed on April 9, 2008, by five inmates at USP Victorville as a result of being transferred there from USP Florence.

Plaintiff seeks compensatory and punitive damages as well as "[i]njunctive relief enjoining defendants Lappin and Sauers from housing plaintiff near inmates or gangs which plaintiff has previously identified as a danger to his safety." (Docket No. 3 at 8).

Very shortly after the plaintiff filed his Prisoner Complaint, he filed an Emergency Motion for a Preliminary Injunction (Docket No. 5) seeking "a preliminary injunction enjoining defendants Lappin and Sauers, their agents, employees, successors or those acting in concert with them from housing Plaintiff in the same institution with inmates or prison gangs who pose a known, specific risk of harm toward Plaintiff and ordering defendants to consider housing Plaintiff in a low security or a medium security institution to determine if such would facilitate Plaintiff's safety needs." (Docket No. 5 at 1-2). On August 3, 2010, Judge Philip A. Brimmer denied plaintiff's motion. Pinson v. Pacheco, 2010 WL 3036682 (D. Colo. Aug. 3, 2010) (Docket No. 17). In doing so, after reciting what a party seeking a preliminary injunction must show, Judge Brimmer found:

> Mr. Pinson fails to allege specific facts that demonstrate he is facing immediate and irreparable injury. Although Mr. Pinson asserts in his Complaint that he was attacked on December 12, 2007 while he was housed at the federal prison in Florence, Colorado and again on April 9, 2008 at the federal prison in Victorville, California, he does not assert that he now is in immediate danger of being attacked where he is housed at the federal prison in Talladega, Alabama. Mr. Pinson seeks injunctive relief from being placed in a prison facility where he may be housed with inmates or prison gang members who pose a known, specific risk of harm to him. His claim of future injury is speculative.

(Docket No. 17 at 1-2). Plaintiff has filed a Notice of Appeal of that ruling. (See Docket No. 22).

In the meantime, plaintiff filed a renewed Emergency Motion for Subpoena, Hearing, and Issuance of a Preliminary Injunction (Docket No. 32), which is now before

the court for a report and recommendation. Plaintiff asserts the following in that motion.

Four days after filing his first motion for a preliminary injunction, plaintiff was involved in

an altercation with another inmate resulting in that inmates' hospitalization. On

August 3, 2010, the day Judge Brimmer denied plaintiff's motion, another inmate was

stabbed to death less than twenty feet from the plaintiff's cell. Plaintiff asserts that

> [t]he danger to Plaintiff posed by prison gangs who have vowed to murder
> Plaintiff has culminated in two attacks upon Plaintiff resulting in serious
> bodily injury, and one with minor injury. (See Declaration). Plaintiff has
> repeatedly sought relief from officials with the BOP (see Exhibits 1, 2).
> While officials have repeatedly responded, Plaintiff has been in 11
> altercations with other prisoners since 2007. (see Exhibit 3). Plaintiff has
> notified staff when inmates threaten him and staff still do not issue
> requested separation immediately. (see Exhibit 4). Plaintiff believes he
> will soon be killed or seriously injured. (see Declaration).

(Docket No. 32 at 2-3). Plaintiff asks the court to issue a subpoena to defendant Sauers

to produce all correspondence from Assistant Federal Public Defender Richard Ely and

Assistant U.S. Attorney Mike Schultz in 2008 which purportedly stated that the plaintiff's

life was in danger and requested that the plaintiff be separated from certain gangs and

inmates due to his cooperation with law enforcement and that the investigators had

determined the attacks on plaintiff at USP Florence and Victorville were due to such

cooperation.

Plaintiff also seeks a hearing on this motion to present the testimony of the

people he lists in his Exhibit 5 to further demonstrate the necessity of a preliminary

injunction. In that Exhibit, plaintiff lists the names and registration numbers of seven

inmates, his case manager, the Warden, the SERO Correctional Services Administrator,

and the Chief and Designator of "D.S.C.C." (Docket No. 32 at 41). Plaintiff does not,

however, indicate on that exhibit or in his motion what those witnesses would testify to

during the hearing plaintiff seeks. The court will thus not grant plaintiff's motion to subpoena these witnesses. Furthermore, given the findings below, the court finds that a hearing is not warranted.

Plaintiff's Declaration (Docket No. 32 at 11-12) attached to his motion includes the following statements. On December 12, 2008, AUSA Mike Schultz of the Southern District of Texas sent defendants Sauers and Lappin a letter requesting that the plaintiff be kept separate from over 30 inmates and several prison gangs or plaintiff could be killed as a result of his cooperation with law enforcement. On August 6, 2009, plaintiff was designated by the Bureau of Prisons' Special Management Unit In Talladega, Alabama. Lappin and Sauers continue to house plaintiff near the gangs who have vowed to murder plaintiff despite three altercations with others since his arrival and a specific request to them to move him from that facility for his own safety. Plaintiff's life is in imminent danger because several inmates have threatened to kill him and have attempted several times to get him. Another inmate was murdered on August 3, 2010, less than twenty feet away from plaintiff after staff knowingly housed him with a rival gang member. Absent court intervention, plaintiff will likely be murdered eventually.

Plaintiff's Certificate of Service attached to this motion states that he served a copy of the motion to the defendants at their last known address. On September 7, 2010, Assistant United States Attorney Mark S. Pestal filed a Status Report advising the court as follows:

> On August 25, 2010 the Court issued a Minute Order (Doc. 34) requiring the defendants to respond to plaintiff's "Renewed Emergency Motion for Subpoena, Hearing, and Issuance of a Preliminary Injunction" (Doc. 32). As a courtesy to the Court, the undersigned notes that the defendants in this case have not been personally served as required by

Fed. R. Civ. P. 4(I), and the undersigned has not been authorized to
represent them in this action pursuant to *Bivens v. Six Unknown Named
Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Doc. 3, p. 3.

(Docket No. 34 at 1).

The court has carefully considered the plaintiff's motion, the exhibits attached
thereto, applicable case law and Federal Rules of Civil Procedure, and the court's file.
The court now being fully informed makes the following findings, conclusions, and
recommendation that the motion be denied.

Plaintiff is proceeding *pro se.* The court, therefore, reviews his pleadings and
other papers liberally and holds them to a less stringent standard than those drafted by
attorneys . Trackwell v. United States Government, 472 F.3d 1242, 1243 (10th Cir.
2007). See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro
se* complaint to less stringent standards than formal pleadings drafted by lawyers).
However, a *pro se* litigant's conclusory allegations without supporting factual averments
are insufficient to state a claim upon which relief can be based. Hall v. Bellmon, 935
F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove
facts that have not been alleged or that a defendant has violated laws in ways that a
plaintiff has not alleged. Associated Gen. Contractors of Cal., Inc. v. California State
Council of Carpenters, 459 U.S. 519, 526 (1983). See Whitney v. New Mexico, 113
F.3d 1170, 1173-74 (10th Cir. 1997) (court may not supply additional factual allegations
to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf); Drake
v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not
"construct arguments or theories for the plaintiff in the absence of any discussion of
those issues). "The plaintiff's *pro se* status does not entitle him to application of

different rules." <u>Wells v. Krebs</u>, 2010 WL 3521777, at *2 (D. Colo. Sept. 1, 2010).

In order to obtain a preliminary injunction, plaintiff must demonstrate the following: (1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the plaintiff if the preliminary injunction is denied; (3) the threatened injury to the plaintiff outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest. <u>Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.</u>, 320 F.3d 1081, 1099 (10th Cir. 2003). In addition, the right to relief must be "clear and unequivocal" because "a preliminary injunction is an extraordinary remedy." <u>Id.</u> Moreover, where the relief requested in a preliminary injunction would (1) disturb the status quo, (2) be mandatory as opposed to prohibitory, or (3) provide the movant with substantially all the relief he may recover after a full trial on the merits, an even heavier burden is placed upon the movant, and the movant must show that the four factors listed above weigh "heavily and compellingly in the movant's favor." <u>Kikumura v. Hurley</u>, 242 F.3d 950, 955 (10th Cir. 2001). "[T]he party seeking injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." <u>Heideman v. South Salt Lake City</u>, 348 F.3d 1182, 1189 (10th Cir. 2003).

Here, because plaintiff's requested relief would disturb the status quo and be mandatory, plaintiff must demonstrate the four requirements for a preliminary injunction weigh heavily and compellingly in his favor. Plaintiff has failed to meet his burden of proof in this renewed motion. Once again, plaintiff's claim of future injury is speculative. While plaintiff claims he was involved in an altercation with another inmate on June 25,

plaintiff does not provide any information about that incident, such as whether plaintiff

was attacked and whether the other inmate is or was a member of the gang that

purportedly poses a threat to him. Moreover, the documentation plaintiff has submitted

with his motion further shows that the Bureau of Prisons is taking steps to separate

plaintiff from purported threats. For example, in a response to a Regional

Administrative Appeal dated December 14, 2009, the SERO Regional Director wrote in

pertinent part:

> This is in response to your Regional Administrative Remedy Appeal
> receipted November 20, 2009. You allege staff at the Federal
> Correctional Institution (FCI) in Talladega, Alabama, have housed a
> separatee of yours in the Special Management Unit (SMU) two cells down
> from you. You request to be separated from this sepratee.
>
> A review of the matter was conducted and revealed the institution
> provided you a timely response indicating they were addressing your
> allegations. A review of housing records indicates on November 24, 2009,
> the sepratee you referenced was relocated further apart from you. There
> may be a separatee in the Special Housing Unit (SHU) or another unit on
> the compound of FCI Talladega. This is not a violation of policy. The
> safe, secure, orderly running of the institution is the priority and
> responsibility of all staff. . . .

(Docket No. 32 at 15). In another document, a Request for Administrative Remedy,

plaintiff requested "separatee" assignments between himself and three inmates based

upon their alleged threat to plaintiff. (Docket No. 32 at 38). The Response to that

request stated that a threat assessment was being conducted to validate separation

concerns. (Docket No. 32 at 41). Such documentation does not show that plaintiff's

concerns are being ignored by prison officials; rather it shows the contrary. Plaintiff has

also submitted a copy of some of his inmate discipline data. Such data, however,

shows repeated disciplinary violations by plaintiff, not by other inmates, for threatening

bodily harm, possessing a dangerous weapon, assault with serious injury, taking a hostage, setting a fire, and disruptive conduct.  (Docket No. 32 at 21-36).  These printouts do not show outstanding threats by other inmates.  Rather, they show a history of serious disciplinary violations by the plaintiff.

In sum, this court finds that the plaintiff has not shown in his motion that he will suffer immediate and irreparable harm if the injunction does not issue.  "To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical." Heideman, 348 F.3d at 1189 (quoting Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C.Cir. 1985)).  In addition to these considerations, plaintiff has not met his heavy burden to show that the injunction is not adverse to the public interest, that public interest here being deference to prison officials' proper administration of prison facilities. See Moles v. Lappin, 2010 WL 796756, at *6 (W.D. Okla. Feb. 26, 2010).  Plaintiff has also not presented any clear and unequivocal evidence that lower-security prisons would be safer for him or devoid of persons from whom he should be separated, let alone that he is even suitable for such placement.  Furthermore, the court notes that the plaintiff is not even currently housed within this jurisdiction, that the prison officials in Alabama where plaintiff is currently housed are not defendants in this action, and that the court does not have jurisdiction over them to direct them to house plaintiff there in a particular manner.

In sum, having weighed the applicable factors in light of plaintiff's heightened burden and the requirement that the right to relief be clear and unequivocal, it is recommended that the plaintiff's renewed motion for a preliminary injunction be denied.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the plaintiff's Renewed Emergency Motion for

Subpoena, Hearing, and Issuance of a Preliminary Hearing (Docket No. 32) be

**DENIED**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2),**

**the parties have fourteen (14) days after service of this recommendation to serve**

**and file specific written objections to the above recommendation with the District**

**Judge assigned to the case.  A party may respond to another party's objections**

**within fourteen (14) days after being served with a copy.  The District Judge need**

**not consider frivolous, conclusive, or general objections.  A party's failure to file**

**and serve such written, specific objections waives *de novo* review of the**

**recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53**

**(1985), and also waives appellate review of both factual and legal questions.**

**<u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley</u>**

**<u>v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**


Date: September 16, 2010                    s/ Michael J. Watanabe
       Denver, Colorado                          Michael J. Watanabe
                                             United States Magistrate Judge