IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01377-REB-MJW

JEREMY PINSON,

Plaintiff,

v.

ROBERT PACHECO,
SARA REVELL,
MERRY WILNER,
DELBERT SAVERS,
HARLEY LAPPIN, and
MICHAEL NALLEY,

Defendants.

---

**RECOMMENDATION ON
DEFENDANT WILNER'S MOTION TO DISMISS (Docket No. 77),
DEFENDANT NALLEY'S MOTION TO DISMISS (Docket No. 96),
DEFENDANT REVELL'S MOTION TO DISMISS (Docket No. 101),
DEFENDANT LAPPIN'S MOTION TO DISMISS (Docket No. 118), and
DEFENDANT'S SUPPLEMENT TO MOTION TO DISMISS (Docket No. 134)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case was referred to this court pursuant to an Order of Reference to United States Magistrate Judge issued by Judge Robert E. Blackburn on August 6, 2010. (Docket No. 20).

The pro se incarcerated plaintiff, Jeremy Pinson, asserts the following in his Prisoner Complaint (Docket No. 3) which is brought pursuant to 28 U.S.C. § 1331 and Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Plaintiff is a federal prisoner who is currently housed at ADX Florence in Colorado. In Claim One, plaintiff alleges a violation of the Eighth Amendment. On

2

October 14, 2007, which was eleven days after plaintiff was moved to USP Florence, plaintiff was assigned to the Special Housing Unit ("SHU") where he initiated administrative remedies seeking protection due to previous assistance to law enforcement and sexual orientation. Defendants Wilner and Revell processed the administrative remedy request, which Revell denied. Another SHU inmate, Brian Humphreys, had a history of assaults and had threatened to assault any inmate assigned to his cell. Revell was aware of Humphrey's threats, but on December 11, 2007, Revell authorized plaintiff's assignment to Humphrey's cell. On December 12, 2007, Humphreys attacked plaintiff until plaintiff lost consciousness and sustained serious bodily injury.

In Claim Two, plaintiff also alleges a violation of the Eighth Amendment. Plaintiff advised defendants Pacheco, Wilner, and Revell that his life was in danger due to previous assistance to law enforcement and sexual orientation. These defendants knew plaintiff would be in danger if transferred to another institution due to his assistance to law enforcement yet submitted a transfer request to defendant Sauers. Prior to his transfer, plaintiff submitted letters and administrative remedy appeals to defendants Lappin, Nalley, and Sauers seeking protection and specifically requesting a transfer to a lower security institution. Revell, Wilner, Pacheco, Lappin, and Nalley took no steps to protect the plaintiff, and on February 14, 2008, Revell and Sauers transferred plaintiff to USP Victorville, California. Prior to such transfer, all defendants knew USP Victorville housed violent prison gangs and was where dozens of assaults and a murder had occurred. Plaintiff was stabbed on April 9, 2008, by five inmates at USP Victorville as a result of being transferred there from USP Florence.

Plaintiff seeks compensatory and punitive damages as well as "[i]njunctive relief

enjoining defendants Lappin and Sauers from housing plaintiff near inmates or gangs which plaintiff has previously identified as a danger to his safety." (Docket No. 3 at 8).

Now before the court are separate motions to dismiss by four of the defendants,[1] Wilner, Nalley, Revell, and Lappin (Docket Nos. 96, 101, 118, and 123, respectively), and a supplement to those motions, which has been docketed as a separate motion (Docket No. 123). Plaintiff filed a combined response to the first three motions to dismiss (Docket No. 110), and those three defendants filed a reply (Docket No. 117). Plaintiff filed a separate response to the fourth motion to dismiss (Docket No. 132) and a response to the supplement to the motions to dismiss (Docket No. 138). The court has considered all of these motion papers as well as the court file and applicable case law and Federal Rules of Civil Procedure. The court now being fully informed makes the following findings, conclusions of law, and recommendations.

All four defendants seek dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that the plaintiff has failed to comply with the applicable two-year

---

[1] The Process Receipt and Return for defendant Delbert Sauers filed on September 20, 2010, indicates that Sauers "is no longer employed at this facility. Subject now [is] Assoc. Warden at Allenwood-Medium. P.O. Box 1500 White Deer, PA 17787." (Docket No. 45). Personal service cannot be attempted upon a defendant in a P.O. Box. There is no indication in the record that a waiver of service was attempted on defendant Sauers.

According to the Process Receipt and Return filed on September 27, 2010, the summons and Complaint for defendant Pacheco was personally served on "Debbie Locke - BOP Legal" on September 21, 2010. (Docket No. 49). On December 14, 2010, however, defense counsel filed a Status Report Concerning Service on Defendant Pacheco in which the court was advised that at the time the Deputy Marshal left the service package with the BOP legal office, Pacheco had not authorized any of its personnel to accept personal service on his behalf. Pacheco is a case manager who does not work in the legal office and is currently on military leave from his work at the BOP. Accordingly, counsel asserted that Pacheco has not been personally served in this case.

statute of limitations. In addition, defendants Nalley and Lappin seek dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(5) on the ground that there was insufficient service of process because the summons and Complaint were not personally served upon them. Finally, in their supplement to the motions to dismiss (Docket No. 134), the moving defendants assert that the Complaint should also be dismissed because the plaintiff allegedly failed to comply with the court's orders to cure specified deficiencies in the Complaint.

**Statute of Limitations**

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016, *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 550 U.S. at 545 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to

plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

Since the plaintiff is proceeding without counsel, his pleading has been construed liberally and held to a less stringent standard than formal documents drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

The four moving defendants assert that the plaintiff has failed to bring his claims within the applicable statute of limitations. "A Bivens claim is subject to the general personal injury statute of limitations of the state where the claim arose. . . . Colorado's general statute of limitations for personal injury claims provides that a claim must be brought within two years after the action accrues." Trujillo v. Simer, 934 F. Supp. 1217, 1226 (D. Colo. 1996). Federal law, rather than state law, however, determines when a federal claim accrues. The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence of the injury which is the basis of his action. Kripp v. Luton, 466 F.3d 1171, 1175 (10th Cir. 2006); Industrial Constructors Corp. v.

6

U.S. Bureau of Reclamation, 15 F.3d 963, 969 (10th Cir. 1994). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." Industrial Constructors Corp., 15 F.3d at 969.

The Prisoner Complaint is dated May 22, 2010 (Docket No. 3 at 8), and was received by the court on June 7, 2010. (Docket No. 3 at 1). At the time the Complaint was submitted to the court, the plaintiff included an inmate account statement that was dated May 25, 2010 (Docket No. 1 at 3). Under the prison "mailbox rule," the Prisoner Complaint should be deemed "filed" at the moment of its delivery to prison authorities for forwarding to the District Court. See Houston v. Lack, 487 U.S. 266 (1988). Therefore, it would appear that the earliest the documents could have been delivered to prison authorities was on May 25, 2010.

A review of the Prisoner Complaint shows that all of the discrete actions allegedly taken by the named defendants were allegedly done more than two years before this action was commenced in late May 2010. In Claim One, plaintiff complains about being attacked by another inmate on December 12, 2007. In Claim Two, plaintiff complains about a transfer to a correctional facility in California on February 14, 2008, and being stabbed by other inmates there on April 9, 2008, as a result of that transfer by the Florence defendants.

Plaintiff, however, argues that the limitations period was tolled while he exhausted his administrative remedies. He asserts that he utilized the Bureau of Prisons' Administrative Remedy Program before filing suit and that his final appeal was decided October 17, 2008. He thus claims that he is entitled to tolling of the statute of limitations from April 9, 2008, the date of the last injury, until October 17, 2008, when the final decision was made in the Administrative Remedy Program. Therefore, he

contends that he had until October 17, 2010, to file his complaint, and because his Complaint was filed on June 6, 2010, he asserts it is not barred by the statute of limitations. In addition, plaintiff claims that equitable tolling applies due to extraordinary circumstances, namely, he contends that his efforts to initiate this litigation were impeded by prison officials' detention of his legal materials pertinent to this legal action.

The issue of tolling is also governed by state law. Fratus v. DeLand, 49 F.3d 673, 675 (10th Cir. 1995). "Once the statute of limitations is raised as an affirmative defense, the burden shifts to the plaintiff to show that the statute has been tolled." Garrett v. Arrowhead Imp. Ass'n, 826 P.2d 850, 855 (Colo. 1992). Under Colorado law, "an equitable tolling of a statute of limitations is limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." Dean Witter Reynolds, Inc. v. Hartman, 911 P.2d 1094, 1099 (Colo. 1996). "The Colorado Supreme Court has yet to find a case that qualifies as an 'extraordinary circumstance' that would justify tolling." Braxton v. Zavaras, 614 F.3d 1156, 1160 (10th Cir. 2010).

Although the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires prisoners bringing suit to exhaust all available administrative remedies before seeking relief for this type of claim in federal court, the Tenth Circuit Court of Appeals has found "that under Colorado law, the statute of limitations is not automatically tolled whenever an individual pursues administrative remedies." Id. (10th Cir. 2010) (state prisoners' § 1983 action). "[T]he PLRA's exhaustion requirement could constitute a circumstance 'mak[ing] it impossible for [a] plaintiff to file his or her claims within the statutory period,' thus entitling a plaintiff to equitable tolling,

'so long as [he or she] makes good faith efforts to pursue the claims when possible." <u>Id.</u> at 1161.  "[T]he 'extraordinary circumstances' aspect of equitable tolling is based on the reasoning 'that it is unfair to penalize the plaintiff for circumstances outside his or her control, so long as the plaintiff makes good faith efforts to pursue the claims when possible." <u>Id.</u> at 1161-62.  Therefore, there could be "'extraordinary circumstances' when exhaustion is a necessary condition precedent to filing suit, *and* a plaintiff has been diligent in pursuing the claim following exhaustion." <u>Id.</u> at 1162.  "Thus whether plaintiff[] [is] entitled to equitable tolling depends on whether [he] diligently pursued [his] claims following the exhaustion of [his] administrative remedies." <u>Id.</u>

Here, defendants correctly note in their reply that this is not a case where the plaintiff's administrative remedy claims were still pending at the time he was required to file his federal court complaint to satisfy the two-year statute of limitations.  This court finds that the plaintiff did not diligently pursue his claims in this case after he allegedly exhausted his administrative remedies in October 2008.

The court acknowledges that the plaintiff claims that in February 2009 while at USP#2 Coleman, Florida, he received his property which had been stored at USP Victorville since May 2008.  He also claims that between February 2009 and June 2010 "staff at the three federal prisons where I was housed repeatedly siezed [sic] and detained all of my legal papers for period averaging from a minimum of 3 weeks to as much as 4 months before returning it to me.  As a result I was unable to prepare legal pleadings relating to the cases which staff had siezed [sic] all the materials on. Sometimes when legal property was siezed [sic] staff only siezed [sic] a portion of the materials."  (Docket No. 110 at 12, ¶ 11).  Plaintiff asserts that "with regard to the instant case, I could not have filed my complaint before June 6, 2010 because of the

interference by staff in my preparing and submitting a proper complaint and also because of the time that took to exhaust my administrative remedies." (Docket No. 110 at 13, ¶ 12). The court also notes that the plaintiff filed a log of some of his grievances, circling entries which indicate that on December 15, 2009, and on August 3, 2010, he filed grievances concerning confiscation of legal materials. (See Docket No. 132 at 18-20).

These logs show that plaintiff filed a number of grievances for a variety of complaints, but neither these logs nor the plaintiff's own affidavit establish how long plaintiff was without unspecified documents allegedly needed to commence this particular action once his administrative remedies were allegedly exhausted on October 17, 2008. Furthermore, while plaintiff claims his property was stored at USP Victorville from May 2008 until sometime in February 2009, his own affidavit bears out that he was nevertheless able to pursue his administrative remedies with respect to these claims while his property was at USP Victorville. (See Docket No. 132 at 13, ¶ 7, "[w]hile at FDC Houston [sic] I continued my administrative remedy process.").

In addition, paintiff's affidavit does not establish that he was without his legal documents for the entire period; rather, he states he was without them for an unspecified number of times for periods ranging from three weeks to up to four months. Furthermore, as stated above, he states that "[s]ometimes when legal property was siezed [sic] staff only siezed [sic] a portion of the material." (Docket No. 110 at 12, ¶ 11).

The court further takes judicial notice of the court's file which includes documents previously submitted by the plaintiff which indicate that his personal property was impounded at various times due to the plaintiff's very serious misconduct, i.e., setting a

10

fire, possessing a dangerous weapon, assaulting with serious injury, and taking a hostage. (See, e.g., Docket No. 32 at 23-26). Therefore, his loss of personal property, presumably including some or all of his legal documents, was due to his own serious misbehavior rather than any wrongful behavior by the defendants or BOP officials.

Moreover, in addition to taking judicial notice of the court's file in this case, the court has taken judicial notice of the court's file in another case filed by the plaintiff in this District (Docket No. 08-cv-01023-MSK-BNB). The files from these two cases contain documents which show that during the pertinent period after his administrative remedies were allegedly exhausted, during which plaintiff claims he was without his legal property and thus could not commence this action, plaintiff was able to submit grievances to the BOP and documents to this court which included information concerning the alleged attacks on him by other inmates that are at issue here in this action. (See, e.g., Docket No. 32 at 14; Civil Action No. 08-cv-01023-MSK-BNB, Docket No. 52-motion for production of documents dated October 23, 2008, which references his stabbing on April 9, 2008; Docket No. 58-motion to compel dated November 2, 2008, concerning documents relating to the April 9, 2008, incident; Docket No. 77-motion for issuance of subpoena deuces tecum dated January 12, 2009, which references the altercation with inmate Humphreys on December 12, 2007, and plaintiff's transfer to USP Victorville, and asserts that prison officials were aware of a substantial risk of harm).

If plaintiff was capable of submitting grievances and filing documents with this court with such information during the limitations period here, it follows that he could have timely commenced this action. The Federal Rules of Civil Procedure merely

require notice pleading, and plaintiff, who is not a neophyte litigator,[2] has not established that he needed unspecified documents to comply with the minimal notice pleading requirements. His Complaint here is not particularly complicated or detailed. Defendants correctly assert in their reply that plaintiff does not specify what information was contained in his legal material that would have been essential to his completing the form Prisoner Complaint.

In sum, this court finds that the plaintiff did not pursue his claims here with diligence, that the defendants did not prevent him from timely filing his claims, and that plaintiff is thus not entitled to equitable tolling. "Neither the defendants nor extraordinary circumstances stood in the way of [plaintiff's] filing suit within the statutory period. Only [his] own inaction prevented [him] from filing in a timely manner." Id. Therefore, plaintiff's claims against the moving defendants are time barred and should be dismissed with prejudice.

**Personal Service**

Defendants Nalley and Lappin also seek dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(5) on the ground that there was insufficient service of process because the summons and Complaint were not personally served upon them. This court does not recommend dismissal of the claims against Nalley and Lappin on this ground at this time.

Service in this case was directed to be effectuated by the U.S. Marshal Service.

---

[2]In a Complaint very recently filed in this District, in response to the question of whether he had filed any prior action in federal court in which he raised or could have raised the claims raised in that action, plaintiff stated, "I have filed over 60 lawsuits, including 2 pending in this court, multiple previous cases in this court. . . ." (Civil Action No. 11-cv-00608-BNB, Docket No. 1 at 4, filed on March 10, 2011).

12

(See Docket No. 21). More specifically, the Order Requiring Service by United States Marshal issued on August 9, 2010 (Docket No. 21), directed the Clerk to first attempt to obtain a waiver of service from each of the defendants, and if unable to do so, then the U.S. Marshal was directed to serve the defendants, noting that if appropriate, the Marshal shall first attempt to obtain a waiver of service. (Docket No. 21 at 1). It appears that defendants Nalley and Lappin have not waived service.

Under the circumstances, dismissal of the claims against these two defendants based on lack of personal service would not be proper without making an inquiry of the U.S. Marshal as to why they were not served. See Barrett v. Philpot, 356 Fed. Appx. 193, 198 (10th Cir. Dec. 15, 2009); Abiodun v. Lindley, 2008 WL 2572096, at *3 (D. Colo. June 2, 2008) (as long as incarcerated plaintiff provided adequate information for defendants to be identified and serve, complaint should not be dismissed for the Marshal's failure to effectuate proper service).

If this case is not dismissed as time barred, then this court recommends that the plaintiff be afforded an extension of time for service upon defendants Nalley and Lappin. The court would then intend to direct the U.S. Marshal to once again attempt to obtain a waiver of service from defendants Nalley and Lappin. If these defendants do not thereafter waive service, then this court would be required to bear the expense of having them personally served, which would be an unnecessary waste of scarce judicial and U.S. Marshal resources and needlessly delay the progress of this case. In any event, in such a case, if defendants lacked good cause for not signing and returning the waiver requested, this court would then consider the imposition upon the defendants the

expenses incurred in making personal service pursuant to Fed. R. Civ. P. 4(d)(2).[3]

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Defendant Wilner's Motion to Dismiss **(Docket No. 77)**, Defendant Nalley's Motion to Dismiss **(Docket No. 96)**, Defendant Revell's Motion to Dismiss **(Docket No. 101)**, and Defendant Lappin's Motion to Dismiss **(Docket No. 118)** be **granted** and that this action be dismissed as against those defendants with prejudice as time barred. It is thus further

**RECOMMENDED** Defendant's Supplement to Motion to Dismiss **(Docket No. 134)** be **denied as moot**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District**

---

[3] The court notes that defense counsel has asserted that "[i]n *Bivens* actions, Fed. R. Civ. P. 4(i)(3) and 4(e) require personal service of a federal employee sued in his individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf." (Docket No. 103). In this court's view, however, the cited rules do not preclude defendants from waiving service. Rule 4(i)(3) states that "[t]o serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g)." Fed. R. Civ. P. 4(i)(3). Rule 4(e) provides the methods for serving an individual within a judicial district of the United States. While Rule 4(e) includes personal service, significantly Rule 4(d)(1) provides in pertinent part that "[a]n individual . . . that is subject to service under rule 4(e) . . . has a duty to avoid unnecessary expenses of serving the summons. The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons. . . ." Fed. R. Civ. P. 4(d)(1). Furthermore, the Notes concerning the 2000 Amendment of Rule 4 states that "[i]t has been understood that the individual [United States officer or employee] defendant must be served as an individual defendant, a requirement made explicit. **Invocation of the individual's service provisions of subdivisions (e), (f), and (g) invokes also the waiver-of-service provisions of subdivision (d).**" (Emphasis added).

14

**Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: March 16, 2011                         s/ Michael J. Watanabe
      Denver, Colorado                         Michael J. Watanabe
                                                                United States Magistrate Judge